No. 64,141

STATE OF KANSAS, *Appellee*, v. GARLAND E. HILL III, *Appellant*.

(799 P.2d 997)

Opinion filed October 26, 1990.

*Thomas Jacquinot*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*John K. Bork*, assistant attorney general, argued the cause, and *Julie McKenna*, county attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, Garland E. Hill III, appeals from the district court's denial of his motion to withdraw his plea of guilty or, in the alternative, to order resentencing. The defendant entered a plea of guilty pursuant to a plea agreement to three class A felonies: two counts of aggravated kidnapping and one count of first-degree murder; and five class B felonies: two counts of aggravated criminal sodomy, one count of attempted first-degree murder, and two counts of rape.

The facts are not disputed. Defendant was charged with eight felonies arising from two incidents involving different victims. He pled guilty as charged to the three class A felonies and the five

class B felonies. In return for his guilty plea, the State promised (1) that he would not be prosecuted in other counties for any crimes that could be charged related to the incident for which the plea was entered; (2) that the State would recommend a controlling term of two consecutive life sentences with all other sentences to run concurrently with that controlling sentence; (3) that the State would recommend to the appropriate authorities incarceration outside the State of Kansas; and (4) that the State would not seek enhancement of the sentence pursuant to K.S.A. 1989 Supp. 21-4504. Pursuant to this agreement, defendant also promised that he would testify truthfully in any case brought against his codefendant, David W. Obermeier.

The terms of this agreement were set forth in the tender of plea of guilty and were discussed at the hearing on October 24, 1988, where both codefendants pled guilty. At this hearing, the trial court reviewed with defendant the terms of the tender of guilty plea. This document lists in detail the constitutional guarantees that were being waived by entering a plea of guilty.

At the plea hearing, the county attorney described in some detail the factual basis for the charges. On two separate occasions, the codefendants forced a woman, who was walking alone early in the morning in Salina, into their car. After sexually assaulting the woman repeatedly, the defendants choked the woman and slit her throat. One woman died; the other woman survived and was a potential witness at the trial. Defendant, who had confessed, agreed that the statement by the county attorney was substantially correct. He indicated his desire to have the court accept the plea and told the court that he was entering the plea to avoid forcing the surviving victim and the families of both victims to go through a trial. The court accepted the pleas of the codefendants and ordered presentence investigations (PSI).

Sentencing occurred on December 14, 1988, before the same judge. At this time, defendant stood by his prior plea and asked the court to sentence him according to the plea agreement. When the court asked the prosecuting attorney if she had a statement to make, she responded that she had been served with copies of the PSI. She proceeded by stating:

"[T]hose investigations were conducted in a thorough and competent, complete manner, of setting out the recommendations as entered into at the time of the plea bargain between the prosecution, the State.

"Further, Your Honor, I would like to state that the victim impact statement of that report made it very clear that the victims' position[s] are that no amount of time in this case is going to be enough time for the damage and for the crimes that have been committed against the State of Kansas, against the family of [D.B.], against [D.B.], and against [V.F.]. But that the Court is in a position, having reviewed this material, having heard the statements of fact which support the pleas of guilty and the convictions in this case, to at this time render a proper and appropriate sentence."

Neither defendant objected to this statement by the prosecutor at that hearing.

The court reviewed in detail the contents of the PSI. The judge reviewed the facts as described in the PSI, noting that this was "just a very cursory review of these wicked and violent crimes committed by the two defendants." He also discussed the contents of the PSI concerning the impact on the surviving victim and on the husband, parents, and children of the deceased victim. The judge next reviewed the past records of criminal activity of each defendant. He noted that defendant Hill began his involvement with the law with a misdemeanor theft as a juvenile at age 10. Hill subsequently committed auto theft and forgery, ran away from the youth center in Atchison, and was referred to the Boys Industrial School in Topeka. As an adult, defendant Hill had several convictions, including theft and an attempted rape charge that was reduced to battery. In 1988, Hill was convicted of possession of cocaine in Reno County and was on probation for that conviction at the time of these incidents. The court further examined Hill's family history and educational background. After reviewing the codefendant's record, the court noted numerous parallels between the two defendants. In particular, each defendant started a life of crime while very young and persisted in those activities until the commission of these acts.

The trial court then applied the criteria for fixing minimum terms as set forth in K.S.A. 21-4606, finding none favorable to the defendants. Just prior to imposing sentence, the court pointed out that because both defendants had been previously incarcerated, they were aware that in prison time seems to virtually stand still. But the court further noted that for the husband, parents, and four children, ages 10, 8, 4, and 2, of the victim who had been killed,

"time . . . has undoubtedly moved very slowly throughout this lengthy ordeal to which the two of you have subjected them, and in the case of [D.B.], time is forever. The two of you have made it so. The surviving victim, the families of both victims, and this community rightfully demand condign retribution. Kansas law provides it. Justice requires it. You deserve it. And I shall now impose it."

The court imposed a maximum sentence on each of the counts and then noted that the difficult part of the sentencing process still confronted him. He had to carefully consider the recommendations of the prosecuting attorney, which were joined by defendants and defense counsel, but emphasized that in the tender of plea of guilty form, the defendants recognized that the court was not bound by the recommendations on the sentence to be imposed. In response to Hill's codefendant's request for mercy, the court stated:

"I trust that the Court will never part company with mercy. On the other hand, when you and [defendant] had the opportunity to grant mercy on these two terrible occasions, you chose not to do so. You could have spared the life of [D.B.] and you could have stopped short of trying to take the life of [V.F.]."

The court concluded:

"[I]n the exercise of the Court's independent judgment, notwithstanding the State's recommendations, . . . the three life sentences just imposed should be ordered to run consecutively, and that the five Class B felony offenses just imposed should be ordered to run concurrently with one another and concurrently with the three consecutive life terms."

The three consecutive life terms would be served consecutively to the felony sentences remaining on defendant's probation and his codefendant's parole, as required by K.S.A. 1989 Supp. 21-4608(3).

Following sentencing, defendant filed a motion to modify sentence. Because defendant did not participate in the evaluation process at the State Reception and Diagnostic Center (SRDC), the court had no new information to that contained in the PSI and available at the time of the original sentencing. Defense counsel once again asked the court to follow the plea negotiation made by all parties, including the victims, emphasizing that defendants admitted guilt for the terrible crimes and saved the community the unnecessary pain and exposure of trial.

When the court asked the State if it had any statement, the county attorney responded: "Your Honor, I do not intend to make a statement and ask that the Court rule on the defense motion to modify." In ruling, the court stated:

"I'm aware that as a result of plea negotiations a recommendation was made for two consecutive life sentences, but, as counsel will recall, I pointed out, as set forth in the Tender of Plea Agreement document itself, that the Court was not bound by any recommendation as to what the sentence should be and, therefore, the Court, in the exercise of its independent discretion, determined that three consecutive life sentences should be imposed, and I know of no development since then which would cause me to alter that position. Therefore, the Court will take the position then the Motion to Modify [defendant's] sentence in any respect should be and is hereby over-ruled, just as the previous motion in the case of [codefendant] was overruled, and the Court would reaffirm the December, 1988 sentence imposed in both of those cases."

Following the denial of the motion to modify sentence, the defendant sought to set aside the guilty plea because the State did not specifically state at the sentencing hearing or at the hearing on the motion to modify sentence that it recommended that the defendant receive two consecutive life sentences with the remaining sentences to run concurrently. In response, the State argued that the court was well aware of the State's position regarding sentencing. The terms of the agreement were discussed when the plea was entered. When the court asked its position at sentencing, the State asserted its recommendations were con-tained in the PSI, which the court clearly had before it. The State argued that it complied with the plea agreement to rec-ommend two consecutive life sentences by making this agreement known to the court and in stating its compliance with that agree-ment on the record. The State pointed out that the court was not obligated or mandated to follow those recommendations.

In ruling on the motion to withdraw the guilty plea, the district court agreed with the State that ¶ 12 of the tender of guilty plea form explained that the recommendation was not binding on the court. Although the plea agreement may have been ambiguous about the position to be taken by the State at a postsentence hearing, the court was fully aware of the State's recommendation, and the State took no position in derogation of the agreement. The court found that the plea agreement was not breached by

the State, that the defendant was represented by two capable attorneys who kept defendant fully informed, and that the proceeding contained no constitutional infirmities. The district court also pointed out that the same judge handled all the proceedings. The court denied defendant's request to withdraw his plea of guilty and refused to assign the case for sentencing by another district judge.

The sole issue before us on appeal is whether the district court erred in denying defendant's motion to withdraw his guilty plea or, in the alternative, to order resentencing. Defendant argues that the State failed to adhere to its promise to recommend that defendant receive a controlling term of two consecutive life sentences at both the sentencing and at the hearing on the motion to modify sentence. At sentencing, instead of specifically stating its recommendation, the State referred to the PSI, noting that it had been conducted "in a thorough and competent, complete manner" and that it set out the recommendations entered as part of the plea bargain. The State also noted that no amount of time could compensate the victims for the damage they had suffered and urged the court to render a proper and appropriate sentence.

The PSI, which is 20 pages long, contains its recommendations on page 19, stating:

"The State of Kansas, through the County Prosecutor, . . . has entered into a plea bargain in which the State has agreed not to invoke the Habitual Violator statute, and also has agreed not to recommend more than consecutive life sentences on two of the 'A' felonies, with the remaining 'A' and five 'B's' to run concurrent with the two consecutive counts."

The PSI concurred with the recommendation by the county attorney that defendant receive two life sentences to run consecutively, with the rest of the sentences to run concurrently to the two life sentences.

Defendant argues that in making this statement without specifically setting forth the sentence recommendation, the State vacillated between a promised recommendation of a maximum term of two life sentences to run consecutively and an implicit attempt to persuade the court to go beyond this recommendation. The defendant contends the State's reference to the recommendation in the PSI did not sufficiently comply with the plea bar-

gain. The defendant relies upon *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971).

In *Santobello*, the prosecutor agreed to make no sentence recommendation. During a seven-month delay between the hearing at which the plea agreement was accepted and the sentencing, the presiding judge retired and a new prosecutor took over the case. At the sentencing, the State recommended a maximum sentence. Defense counsel immediately objected that the plea agreement had been breached. The trial court overruled the objection and proceeded to sentence the defendant to the maximum sentence, stating that it did not rely upon the recommendation by the State.

In *Santobello*, the United States Supreme Court noted, "[A] constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. Although the trial judge stated that the prosecutor's recommendation did not influence him, the Court concluded that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises in the negotiation of pleas of guilty would thus be served by remanding the case to the state courts for further consideration. The Court then left the ultimate relief to be awarded petitioner to the discretion of the state court, allowing it to determine whether specific performance of the agreement should be imposed with resentencing before a different judge or whether the circumstances required allowing petitioner to withdraw his plea of guilty. 404 U.S. at 262-63. Following *Santobello*, the courts have placed a heavy burden upon the Government to follow meticulous standards in both promising and performing plea agreements. *U.S. v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988).

The facts in the present case are distinguishable from those in *Santobello*. The same judge presided at all hearings and, without question, was aware that the State had agreed to recommend a controlling term of two consecutive life sentences. Furthermore, the State made no recommendation contrary to the agreement

made known to the judge. Nor did the defendant object at the time of sentencing that the plea agreement had been breached.

Defendant also argues that the ambiguous statement by the prosecutor here did not specifically comply with the terms of the plea agreement, and, therefore, the guilty plea should be set aside. Defendant recognizes the concern of the State in desiring to advocate the desires of the families for maximum punishment, but notes that the State was under a legal duty to unambiguously recommend double life pursuant to the terms of the plea agreement.

In addition, defendant argues that the State also did not adhere to the plea bargain at the postsentencing hearing to consider the motion to modify sentence. Defendant recognizes that the plea agreement here was ambiguous because it did not specify that the State would be bound by its promises in postsentencing modification proceedings. When such an ambiguity exists, the State is continuously bound by the promise in the plea agreement. *State v. Wills*, 244 Kan. 62, 69-70, 765 P.2d 1114 (1988). In *Wills*, the prosecutor complied with the terms of the plea agreement by recommending that the sentences run concurrently, yielding a 3-to-10-year controlling sentence on all counts. The trial court did not follow the State's recommendation at sentencing, and defendant received consecutive sentences, resulting in a controlling term of 6 to 20 years. Defendant then filed a motion to modify sentence. At the hearing on that motion, the State's attorney referred to the report from the SRDC, indicating it was "not what you would call a good report," and concluding that modification did not appear to be in order. 244 Kan. at 63.

The plea agreement in *Wills* did not specify the obligation of the State regarding a postsentence motion to modify. Because of this ambiguity, we concluded that the plea agreement was susceptible to different interpretations and, therefore, was ambiguous. In such a case, the State's promise to make a favorable sentence recommendation was binding on the State at the subsequent hearing on the motion to modify sentence because the plea agreement contained no language limiting the State's promise to the original sentencing hearing. 244 Kan. at 69-70. Although the State violated the agreement, this court did not find the

defendant entitled to withdraw his plea of guilty. Instead, it directed that defendant be given a new hearing on his motion to modify sentence where the State complied with the agreement. 244 Kan. at 70.

A court may, after sentencing, set aside a judgment of conviction and permit a defendant to withdraw a plea of guilty or nolo contendere to correct manifest injustice. K.S.A. 22-3210(d). Withdrawal of a plea is discretionary with the trial court and will not be reversed on appeal unless it is established that the trial court abused its discretion in refusing to permit withdrawal of the plea. *State v. Underwood*, 228 Kan. 294, 300, 615 P.2d 153 (1980).

In *State v. Byrd*, 203 Kan. 45, 50, 453 P.2d 22 (1969), the standards regulating the practice of negotiating a plea of guilty recommended by the Advisory Committee on the Criminal Trial to the American Bar Association Project on Minimum Standards for Criminal Justice were adopted. The court recognized that plea discussions and agreements can be appropriate when they are carried out and are consistent with the fair and effective administration of criminal justice but cautioned that the trial judge should not participate in plea discussions in order to avoid any appearance of impropriety. Instead, all plea discussions are premised upon an understanding that such agreements are not binding upon the trial judge. Thus, when a plea of guilty is tendered or received as a result of a prior plea agreement, the trial judge may give the agreement consideration, but is not bound by its terms and can reach an independent decision on whether to approve a negotiated charge or sentence concessions. 203 Kan. at 50. In determining whether a defendant should be allowed to withdraw his plea, the trial court should consider whether the defendant was represented throughout by competent counsel; whether he was misled, coerced, mistreated, or unfairly taken advantage of; and whether his plea was freely, fairly, and understandingly made. 203 Kan. at 52.

The facts in the present case support the trial court's decision to not allow withdrawal of the guilty plea. The same trial judge presided at all hearings on defendant's case, including the hearings on the change of plea, sentencing, and the motion to modify

sentence. When defendant's guilty plea was accepted, the judge was informed of the State's recommendation of two consecutive life sentences with all other sentences running concurrently thereto. Although the State did not specifically state its recommendation on the record at the sentencing hearing, the prosecutor did refer the court to the recommendation stated in the PSI. Comments at sentencing establish that the trial court relied upon the PSI throughout and was aware of the State's recommendations. In fact, just prior to imposing sentence, the court acknowledged that it was aware of the State's recommendation but chose instead to exercise its independent judgment by imposing three life sentences. Although the additional comments by the prosecutor were questionable in light of the plea agreement, the prosecutor urged the court to review the materials in the PSI. These materials make clear that the surviving victim and families of both victims accepted the recommended controlling sentence of two life terms to be served consecutively.

At the hearing on the motion to modify sentence, the State did not actively restate the recommendation of two consecutive life sentences but, instead, made no statement and merely asked the court to rule upon the motion. In denying the motion, the court stated its knowledge that the plea negotiations resulted in a recommendation of two consecutive life sentences. The court followed its previous decision that three consecutive life sentences should be imposed in this case and stated that no development since the prior sentencing would cause the court to alter that position.

We conclude the State did not breach the plea agreement or violate the defendant's due process rights. Crucial to our conclusion is the fact that the court was aware of the plea bargain and the State's recommendation at the time of the plea, sentencing, and the hearing to modify sentence. Although the State should refrain from making comments inconsistent with the plea agreement, here, the additional comments by the prosecutor were not tantamount to making a recommendation contrary to the plea agreement.

Defendant has not established that manifest injustice requires setting aside the judgment of conviction and permitting withdrawal of the plea. Therefore, the trial court did not abuse its discretion in denying the motion to withdraw plea and in refusing to order resentencing.

The judgment of the district court is affirmed.