NOT DESIGNATED FOR PUBLICATION

No. 122,308

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BJ LAURI,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed February 26, 2021. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and WARNER, JJ.

PER CURIAM: BJ Lauri pleaded no contest to kidnapping and aggravated sexual battery. At sentencing, he moved to withdraw his plea when the district court signaled that it was not inclined to follow the recommendation in his plea agreement, arguing he had been misled. The district court denied his motion, concluding Lauri had entered the plea knowing the court was not bound by the parties' sentencing recommendation. We agree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The State originally charged Lauri with multiple offenses, including rape, aggravated criminal sodomy, aggravated human trafficking, aggravated assault, criminal threat, unlawful administration of a substance, and battery. The State later added charges of kidnapping and robbery. The facts giving rise to each of these charges are largely irrelevant to this appeal.

Early in the case, Lauri and the State started working toward a plea agreement. The parties agreed that Lauri would plead guilty or no contest to kidnapping and aggravated sexual battery. And the parties initially believed that the presumptive prison sentences for these two crimes, run consecutively, would result in a controlling sentence of 117 months' imprisonment. The State agreed to recommend this disposition at sentencing.

Lauri had previously been convicted of crimes outside of Kansas that could affect his criminal history score and, thus, his presumptive sentence under the Kansas sentencing guidelines. To determine whether and how this history would affect his sentence, the parties requested a presentence investigation report before the plea was finalized. This report showed that Lauri had two previous felony convictions, one of which was a sex crime committed in another state. Because of that conviction, Kansas law classified Lauri as a persistent sex offender—meaning the length of his prison sentence for aggravated sexual battery would be doubled. See K.S.A. 2020 Supp. 21-6804(j). As a result, the presumptive sentence from the pending plea agreement would be longer than the 117-month term the parties previously discussed.

The parties continued to negotiate the plea in light of this new information. They ultimately arrived upon a plea agreement with the following terms:

- Lauri would plead no contest to one count of kidnapping and one count of aggravated sexual battery (as the parties had previously agreed). The State would dismiss all other charges.

- The parties would recommend that Lauri's sentence for the kidnapping conviction should be the lowest duration in the sentencing-guidelines gridbox, a sentence of 68 months in prison.

- The parties agreed that Lauri's presumptive sentence for aggravated sexual battery—34 months in prison—would be doubled under the persistent-sex-offender rule, resulting in a presumptive sentence of 68 months in prison.

- The parties would recommend that these two sentences should be served consecutively, understanding that would result in a presumptive sentence of 136 months in prison.

- The State would not oppose Lauri's request for a durational departure that would result in a controlling sentence of 117 months' imprisonment—the duration the parties discussed before receiving the presentence investigation report.

Before his plea hearing, Lauri signed a written plea advisory. This advisory confirmed several matters the court would discuss at the plea hearing, listing rights Lauri would waive if he entered a no-contest plea. Lauri wrote his initials after each of these waivers and after several other explanations in the advisory, including the following statement: "I know that if the State's attorney and my attorney have agreed upon sentencing recommendations, the judge does not have to follow those recommendations. The judge can impose any sentence allowed by law."

At the hearing on Lauri's plea, the district court spoke with Lauri about the consequences of his plea. The court discussed the rights Lauri would be waiving by pleading no contest instead of challenging the State's charges at trial. Lauri confirmed that he had reviewed the written plea advisory with his attorney. He also indicated that he was not under the influence of drugs or alcohol and did not feel pressured into making his plea. And Lauri stated that the pre-plea presentence investigation report correctly described his criminal history, and he acknowledged the potential maximum sentences for each charge.

The court then discussed the application and effect of the persistent-sex-offender rule on Lauri's sentence, explaining:

> "Kansas law indicates that when you have a prior sexual felony conviction, . . . there is a special requirement that I double the underlying sentence for the new conviction. So, whatever the presumptive sentence will come back for you, given your criminal history for the level of crime that's at issue here, when we look at that spot on the sentencing grid of the range that's there, I am going to be required to double that."

After it explained this rule, the court asked Lauri, "Do you understand that?" Lauri replied, "Yes, sir."

The court informed Lauri that even though the parties might recommend a particular sentence as part of a plea agreement, the court was "not obligated to follow the recommendations of the attorneys." Instead, it could sentence him to "any sentence permitted by law up to the maximums." Lauri again indicated that he understood that the court was not bound by the sentencing recommendations in the plea agreement. The court went on to note: "I generally do [follow the sentencing recommendation in the plea agreement], but I just want you to know that I don't have to, so any promise—there is no promise to you other than to know that you're subject to the maximum sentence." Lauri responded, "Yes, sir."

4

Finally, the court addressed Lauri's indication in the plea agreement that he intended to request a durational departure:

> "Departure means it's a request that I depart from the presumptive sentence that the guidelines indicate that I should impose, and it's a matter of discretion with the Court.
>
> "The State tells me that they're not going to oppose that request. I have to make certain findings, as a matter of law, to support the departure. So, using the numbers that the attorney gave me, if it turns out, based on your criminal history, we're looking at a presumptive sentence of 136 months, I have to make certain findings in your favor to reduce that, the number of months, whether that's down to 117 or—if I am convinced I can impose any lesser number that I would choose, but the attorneys are recommending the 117. Do you understand all of that?"

Again, Lauri responded, "Yes, sir." The court then accepted Lauri's plea of no contest to both charges.

Despite the court's explanation of the findings it must make before granting a departure, the only reason Lauri offered at sentencing to support his departure request was the parties' plea agreement. He argued the State's decision not to oppose his motion and his reliance on the plea bargain together created a substantial and compelling reason to depart from the presumptive sentence under the guidelines. While sympathetic to Lauri's argument, the court indicated it was inclined to deny the requested departure. The court explained that the plea agreement was not a sufficient reason to depart from the presumptive sentence, especially considering the nature of the criminal acts Lauri had committed.

After the court made these statements, Lauri asked to continue the sentencing hearing so he could reevaluate his options in light of the court's suggested disposition. He explained that he would like to consider whether he should move to withdraw his plea

before the court officially ruled on his departure motion. The court granted the continuance.

Lauri then moved to withdraw his plea, arguing he had been misled during the plea colloquy and in his plea negotiations with the State. Lauri noted that although the district court warned him it was not bound by the plea deal, it also stated that it generally followed sentencing recommendations—in other words, Lauri thought the court had all but assured him that he would receive a 117-month sentence. Lauri claimed that he would never have pleaded if he had known that the court would deny his departure request. The State opposed Lauri's motion, arguing that the court's decision to impose a different sentence from what the parties had recommended could not, on its own, constitute good cause to withdraw a plea Lauri had knowingly and voluntarily entered.

The district court denied Lauri's motion to withdraw his plea. The court then denied Lauri's request for a departure and sentenced him to a controlling term of 136 months' imprisonment, followed by lifetime postrelease supervision. Lauri appeals.

DISCUSSION

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects defendants in criminal cases by requiring that any plea be knowingly and voluntarily made. *Brady v. United States*, 397 U.S. 742, 755-56, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). As part of this protection, a court considering a defendant's plea of guilty or nolo contendere must inform the defendant of the direct consequences of his or her plea. 397 U.S. at 755-57. And the record must affirmatively disclose that the defendant understands the potential consequences of the plea and nevertheless chooses to plead guilty or no contest. See *State v. Beauclair*, 281 Kan. 230, 237, 130 P.3d 40 (2006).

K.S.A. 22-3210 was enacted to ensure compliance with these elements of due process. 281 Kan. at 237; see *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Under this statute, a court considering a defendant's plea must determine—and the record must affirmatively disclose—that the defendant enters his or her plea voluntarily and with an understanding of its consequences. *Beauclair*, 281 Kan. at 237. K.S.A. 2020 Supp. 22-3210(a)(2) thus requires a court to inform "the defendant of the consequences of the plea, including the specific sentencing guidelines level . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea."

Any effort to withdraw a plea, once entered, is governed by K.S.A. 2020 Supp. 22-3210(d). And the decision to grant or deny a motion to withdraw a plea lies within the discretion of the district court. *State v. Green*, 283 Kan. 531, 545, 153 P.3d 1216 (2007). On appeal, a person challenging a district court's ruling must establish that the court abused its discretion in reaching that decision. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

K.S.A. 2020 Supp. 22-3210(d) sets forth separate standards for evaluating a motion to withdraw a plea, depending on the timing of the motion. Relevant here, a court may permit a defendant to withdraw a plea "for good cause shown" at any time before he or she is sentenced. K.S.A. 2020 Supp. 22-3210(d)(1). When evaluating whether a defendant has demonstrated good cause to withdraw a plea, a district court generally considers (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020); see also *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016) (While these three factors are considered "'viable benchmarks for judicial

7

discretion,'" they are nonexclusive, and district courts "should not ignore other factors that might exist in a particular case.").

Lauri argues that his circumstances fall within the last two categories. He claims that he should have been permitted to withdraw his plea because the district court misled him during the plea colloquy, leading him to believe that it would grant his departure motion. He also asserts that his plea was not knowingly made because if he had known the district court would not follow the parties' recommendation, he would not have pleaded.

Plea agreements are generally subject to contract principles, and the State—as a party to the agreement—must act fairly and in good faith in carrying out its promises. *State v. Urista*, 296 Kan. 576, 583, 293 P.3d 738 (2013). But a district court is not a party to a plea agreement and is not bound by the parties' sentencing recommendations. *State v. Hill*, 247 Kan. 377, 385, 799 P.2d 997 (1990). Instead, "all plea discussions are premised upon an understanding" that a district court "may give the agreement consideration, but is not bound by its terms and can reach an independent decision on whether to approve a negotiated charge or sentence concessions." 247 Kan. at 385. Thus, both the State and the defendant "assume the risk" in entering into a plea agreement that "the sentencing court will impose a sentence different than the sentence recommended." *State v. Boley*, 279 Kan. 989, 996, 113 P.3d 248 (2005); see also *State v. Haskins*, 262 Kan. 728, 731-32, 942 P.2d 16 (1997) (no error when a district court entered a sentence based on a criminal history score different from what the parties believed when they entered into the plea agreement).

Lauri acknowledges this precedent but argues that this case is distinguishable because the district court misled him when it informed him at the plea hearing that it typically followed the parties' sentencing recommendations. It is true that a criminal defendant may show good cause to withdraw a plea when he or she receives

"misinformation . . . about the applicable law during plea negotiations—particularly when reinforced . . . by counsel's and the district judge's incorrect statements during the defendant's plea hearing." *State v. Kenney*, 299 Kan. 389, 394, 323 P.3d 1288 (2014). But there is a difference between a defendant being misled as to the law or facts, and thus entering a plea without knowing all relevant information, and a defendant's decision to rely on his or her "'mistaken subjective impressions'" despite being provided accurate information. *State v. Harned*, 281 Kan. 1023, 1043, 135 P.3d 1169 (2006).

Lauri claims he only entered his plea because the district court led him to believe he would receive a 117-month sentence. But the facts do not support his argument. Lauri's plea resulted in the dismissal of multiple serious charges—charges that could lead to a significantly longer sentence than the 136-month prison term he ultimately received. As part of Lauri's plea, the parties agreed that the State would not oppose his request for a downward departure. But the written plea advisory, which Lauri signed and initialed before the plea hearing took place, indicated that the district court was not required to follow the parties' sentencing recommendations. At the plea hearing, the court orally informed Lauri that it was not bound by the parties' sentencing proposals. And the court noted that because Lauri's proposed sentence departed from the presumptive sentence under the Kansas sentencing guidelines, Lauri would have to convince the court that substantial and compelling reasons justified that departure. Lauri indicated that he understood these legal principles.

While the court at the plea hearing stated that it generally followed the parties' sentencing recommendations, the record does not support Lauri's argument that this statement induced him to enter the plea. At that point, Lauri had been informed on several occasions, both in writing and in person at the hearing, that the district court was not bound by the parties' sentencing recommendations. He had also been informed that before the court could impose the sentence he requested, he would have to provide substantial and compelling reasons to depart from the presumptive sentence under Kansas

9

law. The fact that the sentencing court later found that he failed to make this showing does not render his plea unknowing or involuntary.

The district court did not abuse its discretion when it denied Lauri's motion to withdraw his plea.

Affirmed.