(95 P.3d 1022)
No. 91,804

State of Kansas, *Appellee*, v. Charles D. Boley, *Appellant*.

Opinion filed August 20, 2004.

*Randall L. Hodgkinson*, deputy appellate defender, for appellant.

*Donna L. Longsworth*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before Rulon, C.J., Green and Marquardt, JJ.

Rulon, C.J.: Defendant Charles D. Boley appeals the district court's order imposing a drug severity level 1 felony sentence upon his conviction for attempted manufacture of methamphetamine. We reverse and remand for further proceedings.

On October 22, 2002, the State charged the defendant with manufacture of methamphetamine, in violation of K.S.A. 65-4159(a) or, in the alternative, attempted manufacture of methamphetamine, in violation of K.S.A. 65-4159(a) and K.S.A. 21-3301, and conspiracy to manufacture methamphetamine, in violation of K.S.A. 65-4159(a) and K.S.A. 21-3302.

As a result of plea negotiations, the State agreed to dismiss all counts except attempted manufacture of methamphetamine and to recommend a downward durational departure sentence of 48 months in exchange for the defendant's agreement to enter a plea of guilty to attempted manufacture of methamphetamine under K.S.A. 65-4159(a) and to pay all relevant costs and fees. The district

court accepted the plea after questioning the defendant to ascertain the voluntariness of the plea.

Prior to sentencing, the defendant filed an objection to the imposition of a drug severity level 1 penalty to his conviction for attempted manufacture of methamphetamine, arguing alternatively that manufacture of methamphetamine should be a misdemeanor under K.S.A. 65-4127c or that the conviction should carry a severity level 3 penalty under K.S.A. 65-4161(a). The district court overruled the objection and found the defendant negotiated a plea to a severity level 1 penalty, which was the basis for the bargain. The court then followed the plea agreement and sentenced the defendant to 48 months.

As a preliminary matter, this court ordered the parties to brief whether *Wilson v. State*, 31 Kan. App. 2d 728, 71 P.3d 1180, *rev. denied* 276 Kan. 974 (2003), applied to the present case. In light of a recent Kansas Supreme Court decision, *State v. Barnes*, 278 Kan. 121, 92 P.3d 578 (2004), it is clear that a defendant may challenge his or her sentence on direct appeal under the reasoning of *State v. McAdam*, 277 Kan. 136, 83 P.3d 161 (2004).

"There are two important distinctions between *Wilson* and this case, the first being that *Wilson* involved a collateral attack rather than a direct appeal. [The defendant's] case was pending on direct appeal when *McAdam* was decided. The second distinction is related to the first. While in *Wilson* the defendant failed to raise the sentencing issue on direct appeal, [the defendant] has raised the sentencing issue on direct appeal . . . . Because this case is not a collateral attack, much of the *Wilson* court's analysis is inapplicable here. The question presented in this case is not whether the *McAdam* rule can be asserted in a collateral attack." *Barnes*, 278 Kan. at 126-27.

The *Barnes* court concluded that Barnes was not barred from raising a *McAdam* challenge to her sentence, even though she failed to object on that basis at trial. *Barnes*, 278 Kan. at 127. Where, as here, a defendant has raised a *McAdam* objection at trial and pursues the alleged trial error on direct appeal, *Wilson* is inapplicable.

According to the reasoning of *McAdam*, this defendant was improperly sentenced to a drug severity level 1 penalty. Because the defendant has no prior convictions under K.S.A. 65-4161, he

should have been sentenced to a drug severity level 3 penalty. See *McAdam*, 277 Kan. at 146-47. The primary issue on this appeal, therefore, concerns the State's ability to withdraw from the plea bargain after the case is remanded for resentencing.

The defendant cites *State v. Haskins*, 262 Kan. 728, 731-32, 942 P.2d 16 (1997), seemingly for the proposition that Haskins was not permitted to withdraw his guilty plea when both he and the State were mistaken about Haskins' criminal history score. However, our Supreme Court did not consider the effect of the alleged mutual mistake of law because the court concluded the erroneous criminal history score did not induce the plea. Haskins could not reasonably rely upon his presumed criminal history score as an incentive to enter a plea because the agreement set out the entire sentencing range for the offense and indicated that the district court would not be bound by any sentencing recommendations set out in the agreement. 262 Kan. at 731-32.

Here, however, the plea agreement clearly established that a conviction under K.S.A. 65-4159(a) carried a drug severity level 1 penalty, with a presumptive sentencing range of 138 months to 204 months. See K.S.A. 2002 Supp. 21-4705. The agreement provided: "The Defendant agrees to: Plead guilty to Count 2, Attempted Manufacture Controlled Substance or Controlled Substance Analog, contrary to [K.S.A.] 21-3301 and [K.S.A.] 65-4159, a Drug Severity Level 1 Felony." Unlike in *Haskins*, here the defendant and the State reasonably relied upon a drug severity level 1 felony as a basis for the plea agreement. The State's agreement to recommend a downward departure sentence of 48 months was otherwise meaningless.

The defendant further cites several departure sentencing cases to support his position. While our Supreme Court, in the context of unconstitutional departure sentences, has determined that an unconstitutional sentence imposed under a plea agreement cannot stand, our Supreme Court has not considered whether, upon reversal of the unconstitutional sentence, the State may seek to avoid the plea agreement and try the defendant for any previously charged offenses which had been dismissed under the plea agreement. See *State v. Santos-Garza*, 276 Kan. 27, 28-33, 72 P.3d 560

(2003); *State v. Cullen*, 275 Kan. 56, 57-61, 60 P.3d 933 (2003); *State v. Pruitt*, 275 Kan. 52, 53-55, 60 P.3d 931 (2003).

In the context of resentencing based upon an unconstitutional departure sentence, however, this court has previously considered if the State may withdraw from the plea agreement on two separate occasions. In *State v. Boswell*, 30 Kan. App. 2d 9, 37 P.3d 40 (2001), this court reasoned that an unconstitutional upward durational departure sentencing recommendation did not implicate Boswell's due process rights to the extent that such a term of the plea agreement provided an inducement for the State, not the defendant. Consequently, Boswell's inducement to enter the plea remained unaffected by the declaration that the departure sentence was unconstitutional.

Relying upon *Jolly v. State*, 392 So. 2d 54 (Fla. Dist. App. 1981), this court then held:

"[W]hen a plea agreement includes an agreement to recommend to the court an illegal sentence, the sentencing court imposes the recommended but illegal sentence, and the illegal sentence impermissibly *increases* the defendant's term of imprisonment, the State may either allow the defendant to withdraw his or her guilty plea, *or* agree the illegal portion of the sentence be vacated and the defendant be resentenced to the proper lesser term." *Boswell*, 30 Kan. App. 2d at 14.

Although the sentence imposed in this case was not illegal, see *Barnes*, 278 Kan. at 124, the sentence did impermissibly increase the defendant's term of imprisonment according to *McAdam*. Therefore, according to *Boswell*, the State must either permit a defendant to withdraw his or her plea or permit the district court to resentence the defendant to the lesser sentence. *Boswell*, however, did not clearly address what happens when a criminal defendant seeks to retain the benefit of his or her plea yet gain the benefit of a favorable change in sentencing laws.

In *State v. Johnson*, 30 Kan. App. 2d 1133, 55 P.3d 927 (2002), this court interpreted *Boswell* to mean that the defendant has the option of choosing whether to void the plea agreement or merely vacate the underlying sentence and impose a lawful sentence. 30 Kan. App. 2d at 1134. However, this interpretation directly con-

tradicts the reasoning in *Jolly*, which both *Boswell* and *Johnson* cited with approval.

In *Jolly*, the defendant had entered a plea bargain, agreeing to serve a 3-year sentence based upon the understanding of both parties that the crime of conviction required a minimum 3-year sentence. Later, the defendant attacked his sentence on the basis that the statute actually provided for a lower minimum sentence. The defendant argued that the plea remained unaffected, only his sentence required correction.

On appeal, the Florida appellate court disagreed with the defendant's argument. The *Jolly* court reasoned that, by attacking his sentence, the defendant was effectively attacking the plea agreement because the 3-year mandatory sentence was the State's inducement for the plea agreement.

"The State's negotiation was clearly based upon the premise that the defendant would receive a mandatory three-year sentence. If the plea negotiation is not binding upon the defendant, then it is not binding upon the state. The *nolle prosequi*, entered before jeopardy attached on the charge for shooting into a dwelling, should not operate as an acquittal nor prevent further prosecution if the negotiated plea is not binding. [Citation omitted.]" 392 So. 2d at 56.

According to *Jolly*, a defendant's discretion is limited to determining whether to attack an improper sentence and release the State from its agreement to vacate prior offenses or accept the plea bargain and remain under the sentence originally imposed. Once a defendant has attacked his or her sentence, however, he or she can no longer force the State to abide by the agreement. Recognizing, however, the potential difficulty of obtaining evidence or witnesses for a trial, the *Jolly* court permitted the State to choose whether the State would accept the sentence modification under the plea agreement or withdraw from the plea agreement and seek prosecution on the previously dismissed offenses.

"[D]ue to the fact that a post-conviction motion may be raised and ruled upon years after imposition, the state may no longer have the witnesses and other evidence necessary to pursue a trial after a defendant successfully has his judgment and sentence vacated. Therefore, in a situation involving a reduction of sentence in contravention of the plea bargain, the state should be given the option of either agreeing that both the judgment and sentence should be vacated and taking the defendant to trial on all original charges, or agreeing that only the excessive sen-

tence should be vacated, while having the judgment stand and allowing the defendant to be resentenced." 392 So. 2d at 56.

Our Supreme Court has noted that the United States Supreme Court applies both contract and constitutional principles to plea agreements. See *State v. Wills*, 244 Kan. 62, 65, 765 P.2d 1114 (1988) (citing *Mabry v. Johnson*, 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543 [1984]). The *Wills* court indicated that due process concerns are implicated only when a defendant was induced to enter into a plea agreement by a false promise or when the prosecution failed to keep one of its promises which induced the plea. 244 Kan. at 65-66.

In the present case, the State has neither premised the plea agreement on a false promise nor failed to keep a promise which induced the defendant to enter a plea. Due process is not implicated, and the parties' rights under the plea agreement should be governed by contract principles.

Unquestionably, here the parties anticipated the imposition of a drug severity level 1 penalty for the commission of the attempted manufacturing offense to which the defendant entered a guilty plea. By seeking the imposition of a drug severity level 3 penalty at sentencing, the defendant clearly attempted to deprive the State of its benefit in the agreement, if not repudiating the agreement entirely. As the defendant states in his brief, the agreement did not specifically prohibit the defendant from seeking a lesser sentence than the 48 months recommended by the State. However, the defendant did agree to a particular severity level.

Admittedly, "[i]n Kansas, the sentencing court is not a party to the contract and is not bound by its terms. [Citation omitted.] The State and defendant may not enter into a plea agreement calling for a certain sentence, only an agreement that each side will recommend to the court a certain sentence. [Citation omitted.]" *Boswell*, 30 Kan. App. 2d at 13. For all ostensible purposes, the parties believed that the defendant was entering a guilty plea for a specific offense, which carried a drug severity level 1 felony penalty. The question of the applicable severity level for a given offense is a matter of statutory construction, which is a question of law, and a

severity level 1 penalty is the applicable penalty for commission of K.S.A. 65-4159(a). *State v. Davis*, 275 Kan. 107, 124, 61 P.3d 701 (2003). The offense, the severity level applied, and the sentence imposed all properly conform to the statutory provisions. See *Barnes*, 278 Kan. at 124.

Contrary to the defendant's position, *McAdam* did not hold that the imposition of a drug severity level 1 penalty for a conviction under K.S.A. 65-4159(a) was illegal or unconstitutional. *Barnes*, 278 Kan. at 123. Rather, our Supreme Court held that K.S.A. 65-4159(a) and K.S.A. 65-4161(a) proscribe identical criminal conduct but impose different penalties. Applying a judicially created rule of statutory construction, the *McAdam* court reasoned the defendant must be sentenced under the lesser penalty. At most, the *McAdam* decision determined that the imposition of a severity level 1 penalty for commission of K.S.A. 65-4159(a) constitutes an "impermissible" sentence. See *Boswell*, 30 Kan. App. 2d at 14.

Under facts very similar to the present case, the Tenth Circuit Court of Appeals has applied the contract doctrine of frustration of purpose to relieve the State from its obligations under a plea agreement when a criminal defendant successfully challenges his or her conviction. See *United States v. Bunner*, 134 F.3d 1000 (10th Cir.), *cert. denied* 525 U.S. 830 (1998). In *Bunner*, the defendant had agreed to plead guilty to an offense for conduct which the United States Supreme Court subsequently held was not criminalized by the pertinent statues. Initially observing the defendant sought to challenge his sentence volitionally, the *Bunner* court reasoned that the defendant's remaining performance under the plea agreement held no value to the Government and, thus, frustrated the Government's basis for entering the plea agreement. This provided the Government with an opportunity to escape its obligations under the agreement, if it so desired. In other words, the intervening change of law which frustrated the Government's intent in entering the plea agreement caused the agreement to become voidable. 134 F.3d at 1005.

The Tenth Circuit's reasoning is persuasive. Here, both parties operated on the assumption that the defendant would be convicted under K.S.A. 65-4159(a), a drug severity level 1 offense in exchange

for dismissal of other offenses in the complaint. The parties then agreed that the State would recommend a downward durational departure sentence of 48 months. By successfully challenging his severity level of conviction under *McAdam*, the defendant would receive a new sentence of 17-19 months. While, unlike in *Bunner*, the State has not lost its entire bargained-for value, the significant reduction in sentence clearly frustrates the State's intended purpose in seeking a plea to a conviction under K.S.A. 65-4159(a). Consequently, the plea agreement should be deemed voidable at the discretion of the prosecutor.

Other jurisdictions have taken a different approach. Most courts allow the State to withdraw from the plea agreement, although some court's require the rescission of the agreement rather than providing the prosecution a choice. Such jurisdictions reason that rescission places the parties back into the position they were in before entering the plea agreement. See *People v. Caban*, 318 Ill. App. 3d 1082, 1088, 743 N.E.2d 600, *rev. denied* 195 Ill. 2d 558 (2001), *cert. denied* 534 U.S. 1162 (2002); *State v. Arviso*, 993 P.2d 894, 899 (Utah App. 1999); *State ex rel. Gessler v. Mazzone*, 212 W.Va. 368, 572 S.E.2d 891 (2002).

In *Mazzone*, the West Virginia Supreme Court stated:

"The dismissals and the guilty pleas, while constituting two components of the plea agreement, were not entirely separate considerations. They were inextricably intertwined, and the plea agreement must be viewed as one unified agreement as we examine its validity. If one component collapses, *i.e.*, the ability of the court to legally sentence the Petitioner as contemplated in the plea agreement, then the other countervailing component, *i.e.*, the dismissal, must also collapse. . . . The 'bargain' become[s] impossible, through mutual mistake regarding statutory realities. Upon that occurrence, this Court cannot condone a resolution, as requested by the Petitioner, which would permit him to retain the benefit of his bargain by having six counts dismissed while serving no sentence for the crimes to which he desired to plead guilty. Where a plea agreement cannot be discharged due to legal impossibility, the entire agreement must be set aside. The Petitioner cannot choose which portions are advantageous to him and implore this Court to apply only those certain portions. There is no equity in that result, no semblance of a bargain, and certainly no public policy which would support such a result." *Mazzone*, 212 W.Va. at 374.

There are multiple difficulties with the mutual mistake approach to contract rescission under the facts presented in this case, how-

ever. Generally, demanding rescission of a plea agreement on the grounds that both parties were mistaken about the law may prove inequitable, especially in drug possession or manufacturing cases, where evidence may be destroyed and witnesses lost. See *Boswell*, 30 Kan. App. 2d at 14 (quoting *Jolly*, 392 So. 2d at 56). More importantly, in this context, a mutual mistake presumes that the State misapplied a severity level 1 penalty to the conviction. This is clearly not the case. There was no mistake of law; a conviction under K.S.A. 65-4159(a) carries a drug severity level 1 penalty according to the plain language of the statute. It is only the subsequent interpretation of K.S.A. 65-4161(a) and the application of *McAdam*, 277 Kan. at 144-47, *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989), and *State v. Clements*, 241 Kan. 77, 83, 734 P.2d 1096 (1987), which demand resentencing.

Furthermore, where there is a mistake of law in a plea agreement, the risk of the mistake may fall to the State, which is presumed to be in a better position to know the applicable law. See *United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999); *Coy v. Fields*, 200 Ariz. 442, 27 P.3d 799 (App. 2001). Under the circumstances of this case, the State could not know our Supreme Court would rule that K.S.A. 65-4159(a) and K.S.A. 65-4161(a) proscribed identical conduct. As such, it is inequitable to apply such a presumption in this case.

In conclusion, where a defendant has successfully challenged a sentence for a conviction subject to a plea on the basis that the sentence impermissibly *increases* the defendant's term of imprisonment beyond that permitted by law and resentencing would effectively frustrate the State's purpose in entering the plea agreement, the State may, in its discretion, withdraw from the plea agreement or choose to perform under the plea agreement as modified.

If the State chooses to withdraw from the plea agreement, double jeopardy provides no impediment to refiling such charges dismissed from the original complaint. "Upon restoration of the status quo ante, the plea agreement no longer [binds] the parties. Therefore, no obligation [remains] which [prohibits] the government from reinstating the previously dismissed charges." *Bunner*, 134

F.3d at 1005. See *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998); *United States v. Podde*, 105 F.3d 813, 817 (2nd Cir. 1997); *Caban*, 318 Ill. App. 3d at 1090; *Mazzone*, 212 W.Va. at 372-73.

Reversed and remanded for further proceedings.