NOT DESIGNATED FOR PUBLICATION

No. 114,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN PAUL HAWKINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES E. PHELAN, judge. Opinion filed August 26, 2016. Affirmed.

*Michaela Shelton*, of Shelton Law Office, P.A., of Overland Park, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

*Per Curiam*: Plea agreements are a species of contract, and they are generally governed by contract law. Defendant Brian Hawkins appeals the Johnson County District Court's restitution order on the grounds that the original plea agreement precluded an enforceable restitution award. The district court effectively recognized that a mutual mistake by the State and Hawkins resulted in an agreement containing a legal impossibility with respect to restitution—a material term of the deal—thereby permitting rescission of the contract. The district court gave Hawkins the option of setting aside the original agreement or accepting a reformed agreement that encompassed restitution. In

1

consultation with his lawyer, Hawkins chose the reformed agreement and was later assessed restitution. He cannot now attack what he accepted in the district court. Under the circumstances and especially because restitution serves both to compensate crime victims and to rehabilitate convicted defendants, the district court reached a fair result. We, therefore, affirm the restitution order.

Before turning to the guiding legal principles, we outline the pertinent facts. The State charged Hawkins with domestic battery in two cases in 2015 for separate incidents involving his former girlfriend. One was 15DV499, and the other was 15DV930. As a result of the incident in 15DV499, the victim claimed about $4,800 in medical expenses and other damages. The prosecutor and Hawkins' lawyer began discussing a plea deal. During those discussions, the prosecutor indicated restitution was an important issue.

The lawyers worked out a deal under which Hawkins would plead no contest to the domestic battery charge in 15DV930 with a joint recommendation for probation and the State would dismiss 15DV499. As to restitution, the written agreement provided for a hearing "on the issue of restitution stemming from 15DV499" but noted Hawkins "opposes paying restitution." Hawkins personally signed off on the agreement, as did both lawyers.

In early October 2015, the district court accepted Hawkins' plea, and the State dismissed 15DV499. The district court took up sentencing and restitution at another hearing 2 weeks later. At the hearing, Hawkins' lawyer explained that after the agreement had been negotiated and the plea entered, she discovered case authority holding that a defendant cannot be ordered to pay restitution related to a charge that has been dismissed unless he or she expressly agrees to do so. She submitted that in the plea agreement Hawkins disputed rather than agreed to the propriety of restitution as to 15DV499. So the district court lacked any legal basis to impose restitution. The prosecutor countered that if

2

the dismissal of 15DV499 precluded an order of restitution, then the court ought to "withdraw" the plea agreement.

After considering the arguments, the district court suggested that Hawkins was "trying to have it both ways" by accepting the benefits of the plea agreement but not the reciprocal detriments. The district court told Hawkins he could either proceed with the restitution hearing or maintain his objection to restitution being legally proper in which case the plea agreement would be set aside. After consulting with his lawyer, Hawkins agreed to continue with the restitution hearing.

Based on the evidence presented at the hearing, the district court ordered Hawkins to pay $4,822.51 in restitution related to the incident in 15DV499 and otherwise sentenced him in conformity with the original plea agreement. Hawkins has timely appealed.

On appeal, Hawkins contends the district court could not have required him to pay restitution based on the original plea agreement, since the charge in 15DV499 giving rise to the victim's damages had been dismissed and he did not agree he owed restitution in that case. Hawkins does not dispute the amount the district court ordered as restitution. There are no disputed facts bearing on the issue, so we exercise unlimited review of what is functionally a question of law. See *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (2015) (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. ___ (November 20, 2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law). We, therefore, owe no particular deference to the district court's ruling. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010); *Estate of Belden*, 46 Kan. App. 2d at 258-59.

The issue also requires us to integrate the law governing plea agreements as contracts with the legal requirements for imposing restitution awards. The lawyers have not couched their arguments to the district court or on appeal in the language of contract law. Nor did the district court in its ruling. But that is more a matter of semantics than substance. We turn first to the salient legal rules on restitution and then consider the applicable contract principles.

District courts may order defendants to pay restitution related only to their crimes of conviction unless they expressly agree to be responsible for losses resulting from dismissed or unfiled charges. *State v. Dexter*, 276 Kan. 909, Syl. ¶ 3, 80 P.3d 1125 (2003). Even if a defendant so agrees, *Dexter* contemplates a restitution hearing to determine the amount absent some further agreement on that point. 276 Kan. at 919. In other words, the agreement to pay restitution for an uncharged crime puts the defendant in the same position he or she would have occupied with respect to restitution upon being convicted of that crime—he or she is entitled to a hearing to fix the amount owed. See K.S.A. 2015 Supp. 22-3424(d)(1).

As part of a criminal sentence, restitution serves varied purposes. It is not intended to be purely or even primarily punitive. Most obviously, of course, restitution provides a vehicle for financial compensation to crime victims for their losses. See K.S.A. 2015 Supp. 21-6607(c)(2) (district court "shall order" restitution as condition of probation "for the damage or loss caused by the defendant's crime"); *State v. Cox*, 30 Kan. App. 2d 407, 408-09, 42 P.3d 182 (2002). As to the defendant, restitution aims to rehabilitate and deter rather than strictly to punish. 30 Kan. App. 2d at 409. The payments ideally instill in criminal wrongdoers some sense of the costs their actions have inflicted on others. *State v. Heim*, No. 111,665, 2015 WL 1514060, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015). Those functions take on added and more immediate significance where, as here, the district court places a defendant on probation rather than incarcerating him or her. Restitution occupies a place quite different from other

components of a sentence and often provides a demonstrable measure of a defendant's willingness to accept responsibility for his or her criminal conduct and to reform those behaviors. This would be such an instance.

A plea agreement entails an exchange of promises between the State and a defendant to dispose of criminal charges. See *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). The mutual promises furnish consideration for the arrangement that amounts to a bilateral contract. *Peoples Exchange Bank v. Miller*, 139 Kan. 3, 7, 29 P.2d 1079 (1934) ("[O]ne promise is generally a sufficient consideration for another promise in a mutual and bilateral contract."); see also *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012) (California law recognizes bilateral contract based on mutual exchange of binding promises to take specified acts). Accordingly, contract law generally governs the interpretation and enforcement of plea agreements. *Peterson*, 296 Kan. at 567. In some circumstances, blackletter contract principles may yield to particular necessities of the criminal justice process. See *State v. Boley*, 279 Kan. 989, 992-93, 113 P.3d 248 (2005). We don't perceive this to be one of those circumstances.

The record shows that when the lawyers negotiated the written plea agreement, they believed they could dismiss the charge in 15DV499 and still have a hearing to determine whether Hawkins factually should be obligated to pay restitution at all in that case and, if so, in what amount. In other words, they understood the agreement would preserve a forum to determine the merits of the State's request for restitution. The record also shows the State insisted on a provision addressing restitution, making it a material part of the deal. The comparatively large amount of restitution and the nature of the damages—medical expenses resulting from a domestic battery—underscore the materiality of restitution in the prosecution of Hawkins.

For purposes of the original plea agreement, Hawkins took the position his former girlfriend suffered no harm that would support restitution in 15DV499 and intended to

dispute her factual assertions during the hearing. After negotiating the plea agreement and having her client enter a plea based on that agreement, Hawkins' lawyer discovered the law—specifically the *Dexter* decision—did not permit what the agreement contemplated. The lawyer then called the district court's attention to *Dexter* and argued that Hawkins could not be required to pay restitution based on the charge in 15DV499 precisely because the case had been dismissed as part of the plea agreement.

Looked at through the prism of contract law, the parties, by virtue of a mutual mistake, had entered into an agreement requiring the performance of a legal impossibility with respect to a material term of their arrangement. A contract premised on a legally impossible performance of a material promise fails. *Yankton Sioux Tribe v. United States*, 272 U.S. 351, 358, 47 S. Ct. 142, 71 L. Ed. 294 (1926) ("The general rule undoubtedly is that, where there is a legal impossibility of performance appearing on the face of the promise there is no contract in respect of it."); see *Turbines Ltd. v. Transupport, Inc.*, 19 Neb. App. 485, 501, 808 N.W.2d 643 (2012); Restatement (Second) of Contracts § 265 (1981) (discharge by supervening frustration). The parties may be released from the contract and restored to the positions they occupied before entering the agreement. *May v. Watt*, 822 F.2d 896, 900 (9th Cir. 1987) (contract may be rescinded when purpose has been frustrated); *Turbines, Ltd.*, 19 Neb. App. at 501. The rule is a narrow one.

Typically, the frustration of purpose substantially impairs the benefit flowing to one of the contracting parties. Here, however, the legal impossibility effectively deprived both sides of something they mutually sought in the form of a hearing on the merits of a restitution award.

The problem in this case, then, also involves mutual mistake, another contract principle that may free the parties of their obligations. *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.2d 1194 (1991) ("In the event of a mutual mistake, either of law or fact, on the terms of the contract, the contract is not binding on the parties."); *Garrison v. Berryman*,

225 Kan. 644, 647-48, 594 P.2d 159 (1979) (affirming district court's rescission of contract for sale of land based on parties' mutual mistake regarding floodplain restrictions). In *International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, 500-01, 393 P.2d 992 (1964), the court recognized that the doctrine of mutual mistake could be applied to settlement agreements in civil litigation. The mutual mistake must impair a material aspect of the bargained-for exchange rather than an incidental matter. *Dorman v. Kansas City Terminal Ry. Co.*, 231 Kan. 128, 132, 642 P.2d 976 (1982) (considering federal law and Kansas law as to mutual mistake of fact); *Gill v. Kreutzberg*, 24 Ariz. App. 207, 209-10, 537 P.2d 44 (1975) (party must show "a mutual, material mistake of law . . . [to] invalidate agreement"); *In re Marriage of Woods*, 207 Or. App. 452, 462, 142 P.3d 1072 (2006) (parties released from stipulation based on material mutual mistake of law).

In *Boley*, the court considered the doctrines of mutual mistake and impossibility or frustration of purpose in the context of a plea agreement. In that case, Boley and the State agreed he would enter a plea to a charge of attempting to manufacture methamphetamine and the prosecutor would both dismiss a related conspiracy charge and recommend a downward durational departure to a sentence of 48 months in prison. The agreement, however, neither required Boley to join in the sentencing recommendation nor otherwise limited his ability to seek a lesser sentence. At sentencing, Boley argued he should receive a shorter prison term based on the identical offense doctrine. The district court declined to apply the doctrine, and Boley appealed. On appeal, the State argued that Boley's position would frustrate the purpose of the plea agreement. The court rejected the argument because the parties cannot bind a district court to a particular sentence through a plea agreement. Notwithstanding a plea agreement, the district court retains the authority and the duty to impose what it considers to be an appropriate punishment consistent with the sentencing statutes. Accordingly, both parties "assume the risk the sentencing court will impose a sentence different than the sentence recommended as part of the plea agreement." 279 Kan. at 996. And the district court's rejection of a

7

recommended sentence for whatever reason cannot frustrate the purpose of the agreement. There was no genuine frustration of purpose or legal impossibility of performance in *Boley*. 279 Kan. at 996-98.

Here, however, legal impossibility and the resulting frustration of the plea agreement were real. When Hawkins and the State entered into the plea agreement, they did not intend to constrain the district court's authority to determine if restitution were factually appropriate and an appropriate amount. Rather, they wanted to preserve both the district court's authority and their ability to argue the underlying dispute. But the plea agreement created a legal impossibility as to that condition and, thus, frustrated the purpose of the agreement as to an especially material part of the disposition of the charges.

In *Boley*, the court also considered the mutual mistake doctrine and found it inapplicable to avert Boley's challenge to his sentence. 279 Kan. at 998. It's not entirely clear from the published opinions that there actually was a mutual mistake in the sense that Boley and his lawyer shared the prosecutor's view of the governing law. See *State v. Boley*, 32 Kan. App. 2d 1192, 1193, 95 P.3d 1022 (2004), *rev'd* 279 Kan. 989; 279 Kan. at 998. But the Kansas Supreme Court rejected mutual mistake because "under the circumstances of the case . . . , it would not be inequitable to allow the risk of the mistake of law to fall to the State." 279 Kan. at 998. The decision pointed out that Boley's sentencing argument based on the identical offense doctrine had been percolating in the courts for some time. 279 Kan. at 997-98.

A general rule requiring the State to bear the burden of a mistake of law in a criminal prosecution seems unremarkable. The State, as a political entity, reasonably ought to be charged with constructive knowledge of its own statutes. And the same might be said of published opinions of a state's highest court construing criminal statutes. Here,

the *Dexter* decision may not have been especially well known, but it had been the law for more than a decade.

The courts, however, also impute at least constructive knowledge of the law to criminal defendants. See *State v. Davisson*, 303 Kan. 1062, 1067-69, 370 P.3d 423 (2016) (ignorance of law will not permit criminal defendant to proceed with untimely motion to withdraw plea); *State v. Andrew*, 301 Kan. 36, 48, 340 P.3d 476 (2014) (court presumes criminal defendant should have known law of self-defense). So constructively, at least, everybody in this case should have been fully informed as they negotiated the plea agreement. But it's apparent neither lawyer knew of *Dexter* or the holding limiting the availability of restitution when they agreed to their deal. (Had the prosecutor been aware of *Dexter*, she presumably would have presented an offer to Hawkins allowing him to plead no contest in 15DV499 rather than 15DV930. And we likely would have no restitution kerfuffle.)

Given the multifaceted role restitution plays in the criminal justice process, we think fairness here would support the application of both legal impossibility and mutual mistake to require rescission of the original plea agreement. The direct financial interests of crime victims in restitution awards figures heavily in that outcome. Despite their statutory right to restitution, those victims have no legal standing in a criminal prosecution to independently protect that right. Accordingly, both parties to a plea agreement addressing restitution ought to bear the consequence of *their* mutual mistake that would compromise a victim's right to compensation for damages resulting from the crime of conviction. In some cases, restitution might be sufficiently incidental to the overall plea negotiations and the resulting agreement that such a mistake or legal impossibility would not prevent a district court from enforcing the bargain.

Here, the district court correctly determined the plea agreement could not have been enforced with respect to restitution as the parties had intended it. Because of the

9

central importance of restitution in this case—based on the amount, the nature of the crime, and the defendant's ability to promptly begin satisfying that obligation—the district court also properly found the plea agreement had to be set aside in its entirety and the parties restored to their initial positions.

As a technical matter, the plea agreement would have been rescinded as a remedy for legal impossibility or frustration of purpose. See *May*, 822 F.2d at 900; *Beals v. Tri-B Associates*, 644 P.2d 78, 80-81(Colo. App. 1982) (rescission recognized as remedy for substantial frustration of contract); *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 2-3, 933 N.E.2d 860 (2010). A mutual mistake as to a material term would have prevented a contractual "meeting of the minds," meaning the parties never entered into a binding agreement. See *Albers*, 248 Kan. at 580 ("In order to form a binding contract, there must be a meeting of the minds on all essential elements."); *Silicon Intern. Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 551-52, 314 P.3d 593 (2013); *Conwell v. Gray Loon Outdoor Marketing Group, Inc.*, 906 N.E.2d 805, 812-13 (Ind. 2009). We need not identify the remedial pigeonhole, since the district court reached the right conclusion in holding the parties were not bound by the original agreement.

Having concluded the plea agreement to be unenforceable as written, the district court should have so informed the prosecutor and Hawkins' lawyer and allowed them an opportunity to fashion a new understanding. It was, after all, their agreement that failed. By presenting Hawkins with the option of acknowledging he would owe restitution in an amount to be determined, the district court really was taking up the State's role in recasting the plea agreement. But we see no substantive problem. The prosecutor did not object to the district court's suggested resolution, effectively adopting it as the State's position. And Hawkins likewise did not object. After privately discussing the situation, Hawkins and his lawyer accepted that option and went on with the restitution hearing. Their acceptance satisfied the requirement of *Dexter* and then permitted the district court to order restitution for the crime charged in 15DV499, even though that case had been

dismissed. They also signaled their acceptance of the other terms of the original plea agreement, so modified to account for restitution in 15DV499, and thus reflecting a new, if substantially similar, agreement. Hawkins, therefore, cannot now complain about what he accepted in the district court. The restitution award conformed to the final agreement of the State and Hawkins disposing of both cases.

Affirmed.