NOT DESIGNATED FOR PUBLICATION

No. 126,779

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHNNIE C. SHEARS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Submitted without oral argument. Opinion filed July 26, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and CLINE, JJ.

PER CURIAM: Prisoners in Kansas can collaterally attack their convictions after the normal period allowed by law if they present a colorable claim of actual innocence. This appeal focuses on such a claim. Our holding on the matter is framed by the parameters of appellate law. Simply put, we cannot and will not assess the credibility of witnesses.

*The case history shows a plea, an appeal, and then several motions for relief.*

In 1995, in three separate cases, Johnnie Charles Shears pled no contest to premeditated first-degree murder, rape, and aggravated robbery, for crimes committed in September and December 1994. The district court sentenced him to a hard 25 life sentence for the murder, a 184-month concurrent sentence for the aggravated robbery, and a 276-month consecutive sentence for the rape. The next year, his convictions and sentences were affirmed on appeal. *State v. Shears*, 260 Kan. 823, 925 P.2d 1136 (1996).

In 1997, Shears filed a K.S.A. 60-1507 motion alleging there was inadequate factual basis to support his pleas and that he was denied effective assistance of counsel when entering the pleas. The district court denied the motion, and a panel of this court affirmed on appeal. *Shears v. State*, No. 81,358, 1999 WL 35814463 (Kan. App. 1999) (unpublished opinion).

In 2003, Shears filed a second K.S.A. 60-1507 motion seeking to set aside his pleas. The district court denied the motion, and a panel of this court affirmed on appeal. *Shears v. State*, No. 95,021, 2007 WL 1041766 (Kan. App. 2007) (unpublished opinion).

In 2009, Shears filed another motion to withdraw his pleas. The district court denied the motion. Shears filed a late notice of appeal. The district court determined none of the exceptions to the requirement of timely filed notice of appeal applied. A panel of this court affirmed in part and dismissed in part. *State v. Shears*, No. 108,677, 2013 WL 6799218 (Kan. App. 2013) (unpublished opinion).

*This motion claims innocence on one crime.*

In 2022, Shears filed the K.S.A. 60-1507 motion that is the subject of this appeal. Shears made five substantive claims:

- His hard 25 life sentence for a crime he committed as a juvenile was cruel and unusual punishment;
- the district court lacked jurisdiction to impose lifetime postrelease supervision;
- his pleas were involuntary due to his incompetence;
- his no-contest plea to aggravated robbery must be vacated because he is actually innocent of that charge based on new evidence; and
- he did not possess a culpable mental state as an adolescent to understand the nature and criminality of his actions.

In support of his actual innocence claim, he included a notarized affidavit dated June 11, 2018, by Alphonso Briscoe claiming responsibility for the crime. He argued his actual innocence constituted manifest injustice that excused the late filing of his K.S.A. 60-1507 motion.

The district court summarily denied Shears claims as untimely and successive, except for the actual innocence claim. The district court held an evidentiary hearing to determine whether Shears had made a colorable claim of actual innocence to permit review of the untimely raised issue.

*The district court focuses on the robbery conviction.*

Shears' aggravated robbery conviction was based on a robbery of Little Caesar's Pizza shop. At Shears' plea hearing, the prosecutor gave the following factual basis for the plea:

> "On the 5th day of December 1994, at approximately 9:51 PM, Officer Evans of the Topeka Police Department was dispatched to Little Caesar's Pizza at 2113 Southwest Belle Avenue, located in Shawnee County, Topeka, Kansas.

3

"He was there informed by David Henry, the clerk, that he was sitting behind the front counter when a black male approximately 5 feet 5 inches to 5 feet 6 inches, in his 20's, approximately 148 pounds, walked in brandishing what appeared to be a chrome, stainless steel, semiautomatic pistol. The black male was wearing a dark jacket, a black stocking cap, and a green bandana around his face. As soon as he entered the store he went straight toward the clerk and pointed the weapon at the clerk telling him to put the money in the bag. The black male walked over to the register on the right side and brandished a brown paper bag. After leaning the bag over the counter next to the register, he told the clerk, 'Put the money in the bag and hurry.' The black male kept telling Mr. Henry to, 'Put the money in the bag, put the money in the bag.' The suspect also advised Mr. Henry to put the change in the drawer in the bag also.

"The suspect then turned around and told the clerk, 'See you later,' and started for the front door. Approximately $150 was taken from the store.

"Officer Evans then went next door and spoke to the clerk at the Kwik Shop. The clerk advised the officer that a black male came in and out of the business several times between 8:00 o'clock PM and 9:45 PM. The Kwik Shop had closed circuit cameras and arrangements were made to pull the video tape at a later time.

"On the 8th day of December 1994, Amber Martindale was interviewed by Det. Fusaro, Topeka police officer. Amber Martindale is a baby-sitter for Torrie Mason.

"Ms. Martindale advised Det. Fusaro that early that morning Torrie Mason and Johnnie Shears had told her of their intent to rob a David Cook. . . . Miss Martindale also informed Det. Fusaro that Johnnie Shears had told her that he had done a robbery at the Little Caesar's Pizza Place. Ms. Martindale stated that there was a clipping in yesterday's paper, Wednesday, December 7, 1994. Johnnie Shears stated that he had used a silver 9mm gun and stole $140.

"On the 9th day of December 1994, Det. Sergeant R. W. Mills of the Topeka Police Department interviewed Johnnie Shears. Mr. Shears was shown a photograph of what was believed to be Mr. Shears at the Kwik Shop on 21st and Belle on December 5th, 1994. Mr. Shears identified the person in the photograph as himself but denied committing the robbery of the Little Caesar's Pizza Place next door to the Kwik Shop. Mr. Shears did admit to Det. Sgt. Mills that he and Torrie Mason had planned to rob David Cook and that after hitting Mr. Cook in the back of the head with a gun that the gun discharged and David Cook fell to the ground.

"David Cook died of a single gunshot wound to the back of his head."

4

Briscoe's affidavit gave some similar details of the robbery:

"I declare under penalty of perjury that the foregoing is true and correct.

"I, Alphonso Briscoe, did rob Little Ceasars Pizza on 21st and belle, in Topeka, Kansas in the evening hour of December 5, 1994 with a 9mm handgun and got away with $150.00.

"On the evening in question I was wearing a green scarf which some people call a bandana with black gloves, I told the Clerk to put all of the money in a brown paper bag, I even took the change.

"As I walked out of the business, I turned and told the Clerk I would see him later.

"Upon running to my get away car, I ran to my left South-East, I was by myself when I robbed the place, it was only one person in there and that was a white man.

"I've been carrying this around with me for years, I've changed my life around and found God, it's time for me to come clean with myself and put it in God's hands.

"I knew for years they locked someone else up for robbing the place but did not care because back then I did not care nor did I have God in my life, it's time for me to do the right thing by coming clean.

"I am willing to go to jail for the above robbery I committed, I am willing to tell anyone that I have to what I did.

"No one are giveing [*sic*] me anything to do this affidavit, I am doing this because I know that it is the right thing to do.

"I know that false swearing or affirming will subject me to the penalties of perjury."

At the K.S.A. 60-1507 motion hearing, Briscoe testified. Briscoe was advised by counsel not to testify and to invoke his Fifth Amendment right against self-incrimination. Briscoe told the court he wanted to accept responsibility for what he had done but that he would invoke his Fifth Amendment right regarding the details of the robbery:

"I can only accept responsibility for what I've done, you know. Nobody's coercing me. Nobody's forced me. Nobody's paid me. You know, I wrote that affidavit on

5

my own volition. You know, everything in there's true to the best of my knowledge. And that's pretty much, you know, where I come from.

"And I was having a conversation with another inmate. He told me his cousin was in trouble for something that, you know, I done when I was 16 years old. And I'm just trying to right a wrong. And that's why I put that affidavit together and gave it to his cousin to give to him.

"You know, Mr. Shears, I don't know him like that. He's not my friend. You know, we're not hang out buddies or anything like that.

"This just boils down to, I'm not doing this for him. I'm doing this for me. You know, I have to answer to God for my actions. And, you know, it messes with my head and my heart to think that somebody could possibly be in trouble for something that, when it's all said and done, I know that I was responsible for."

Briscoe's affidavit was admitted into evidence. Briscoe testified he was not friends with Shears. He had had only one conversation in passing with Shears while incarcerated at Lansing Correctional Facility, and that conversation took place after he made the affidavit. Briscoe testified he typed and signed the affidavit and then had it notarized. The information in the affidavit was true. Nobody requested him to make the affidavit and he made it of his own free will. Nobody told him any details about the robbery. He had never reviewed any police reports or court documents about the robbery. When asked if he could recall any details about the robbery without reviewing the affidavit, he invoked his Fifth Amendment right against self-incrimination. Briscoe testified he committed the robbery. But he refused to answer any questions about the robbery such as when and where it occurred and what he was wearing. He would not waive the statute of limitations defense if he was to be charged with the robbery.

*The district court did not believe Briscoe.*

The district court denied the motion. The court ruled it could not find Briscoe to be a credible witness. The court offered several reasons.

"Briscoe was present at the evidentiary hearing in September 2022. At the hearing, Briscoe testified on direct examination that he wrote the affidavit and that its contents were true, although he admitted he did not review the affidavit prior to the hearing. He also stated he voluntarily drafted the affidavit, and that he was not offered or coerced to make the affidavit. Briscoe testified that he created the affidavit after having a conversation with another inmate, who shared that his cousin was in trouble for something Briscoe had done. Despite the language in the affidavit indicating Briscoe was willing to talk about his actions and his testimony about wanting to take responsibility, he refused to waive the statute of limitations defense. Briscoe also asserted his Fifth Amendment right against self-incrimination when asked any questions about the robbery at issue."

The court then pointed specific points that it found unpersuasive:

"[Movant Shears] maintains Briscoe was a credible witness and argues Briscoe's stature, build, and age are very similar to his own. However, despite Briscoe's testimony that the affidavit was voluntary and accurate, he refused to answer questions under oath to permit the Court to evaluate his credibility. He flatly refused to testify about any details of the robbery. '[C]redibility cannot generally be determined through cold affidavit testimony.' *Beauclair v. State*, 308 Kan. 284, 295, 419 P.3d 1180 (2018) quoting *Neer v. State*, No. 111,230, 2015 WL 1310815, at *4 (Kan. App. 2015) (unpublished opinion). The Court was unable to find Briscoe to be a credible witness. Therefore, it cannot find that the affidavit is of such materiality that it would likely produce a different result at retrial. Finally, it is worth noting that Shears waived a reading of the complaint at his plea hearing, and the Court of Appeals determined 'there were adequate factual bases to accept Shears' no contest pleas in the district court.' *Shears v. State*, 1999 WL 35814463, at *2."

On appeal, Shears contends the district court's credibility determination is not supported by substantial competent evidence. Shears argues that Briscoe's invocation of his Fifth Amendment privilege did not impair his credibility. Briscoe testified he committed the robbery and wanted to take responsibility for his actions. He testified he

7

wrote the affidavit and its contents were true. He argues the affidavit was uncontradicted, as Shears always denied committing the robbery. According to Shears, the affidavit would create reasonable doubt in the minds of jurors if admitted at a trial.

*Prisoners have one year to file one motion for relief but there are exceptions.*

Because of the limits set by law, the only claim raised by Shears that the district court could consider was the claim of innocence of the robbery conviction. The district court properly dismissed the remaining claims as successive and untimely. The following thread of laws explains why that is true.

Under K.S.A. 2023 Supp. 60-1507(c), district courts need not consider more than one habeas motion seeking similar relief filed by the same prisoner. *State v. Mitchell*, 315 Kan. 156, 160, 505 P.3d 739 (2022); Supreme Court Rule 183(d) (2024 Kan. S. Ct. R. 241). A movant is presumed to have listed all grounds for relief in an initial K.S.A. 60-1507 motion and therefore "must show exceptional circumstances to justify the filing of a successive motion." *Mitchell*, 315 Kan. at 160.

Exceptional circumstances are unusual events or intervening changes in the law that prevented the movant from reasonably being able to raise the issue in the first postconviction motion. *Mitchell*, 315 Kan. at 160. Exceptional circumstances can include a colorable claim of actual innocence, such as one based on the crime victim's recantation of testimony that formed the basis of the charge against the defendant. *Beauclair v. State*, 308 Kan. 284, 304, 419 P.3d 1180 (2018).

A defendant has only one year from when a conviction becomes final to file a motion under K.S.A. 60-1507(a). K.S.A. 2023 Supp. 60-1507(f)(1). The one-year time limitation for bringing an action under K.S.A. 60-1507(f)(1) may be extended by the district court only to prevent a manifest injustice. K.S.A. 2023 Supp. 60-1507(f)(2).

To determine the existence of manifest injustice, courts are "limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2023 Supp. 60-1507(f)(2)(A). Actual innocence means that the prisoner must "show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2023 Supp. 60-1507(f)(2)(A). Courts are to dismiss a motion as untimely filed if, after inspection of the motion, files, and records of the case, the court determines that the time limitations have been exceeded and that dismissing the motion would not equate with manifest injustice. K.S.A. 2023 Supp. 60-1507(f)(3).

When a K.S.A. 60-1507 movant advances a claim of actual innocence as a gateway to overcome the procedural bar of untimeliness under K.S.A. 60-1507(f), the movant is entitled to consideration of the merits of the motion if the claim of actual innocence meets the standard from *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). *Beauclair*, 308 Kan. 284, Syl. ¶ 1.

> "'[A] prisoner retains an overriding "interest in obtaining his release from custody if he is innocent of the charge for which he was incarcerated. That interest does not extend, however, to prisoners whose guilt is conceded or plain." . . . "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." [Citations omitted.]
>
>  . . . .
>
> "'. . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' [Citations omitted.]" *Beauclair*, 308 Kan. at 299.

The court must consider "'all the evidence'"—old and new—without regard to rules of admissibility that would govern a trial and make "'a probabilistic determination

9

about what reasonable, properly instructed jurors would do.' [Citation omitted.]" *Beauclair*, 308 Kan. at 301. The movant's burden is to show "'that more likely than not any reasonable juror would have reasonable doubt.'" 308 Kan. at 301. Manifest injustice is "'rare'" and to be applied only in an "'extraordinary'" case. 308 Kan. at 302. A gateway claim of actual innocence "will qualify as 'colorable' if there is 'sufficient doubt' about [the movant's] guilt 'to undermine confidence' in his conviction 'without the assurance' that the conviction 'was untainted by constitutional error.'" 308 Kan. at 303.

Credibility cannot generally be determined through cold affidavit testimony. *Beauclair*, 308 Kan. at 295. When presented with an affidavit bearing on the movant's actual innocence, the district court should hold an evidentiary hearing to hear live testimony on the claim. At the evidentiary hearing, the district court may assess the credibility of the witness. Credibility assessments are not the tasks of appellate courts. See 308 Kan. at 296, 301-03.

*As an appellate court, we cannot and will not determine credibility.*

Here, the district court ruled it could not find Briscoe a credible witness because Briscoe "flatly refused to testify about any details of the robbery." We find no error in the district court's ruling. The affidavit gave certain details of the robbery such as where and when it took place, what the robber was wearing, and how much money was taken.

Even though Briscoe testified that he wrote the affidavit and its contents were true, he would not or could not give any of the details of the crime that he purportedly provided in the affidavit. Thus, the district court could not confirm that Brisco had any independent knowledge of the robbery. The court observed Briscoe at the hearing and could not find him a credible witness. We do not reassess witness credibility. With no credible new evidence, Shears failed to show it was more likely than not that no reasonable juror would have convicted him of the robbery in light of new evidence.

10

We will not substitute our judgment of the credibility of this witness for the judgment made by the district court that saw and heard his testimony. That court was in the best position to watch his reactions and hear his tone of voice when questioned. Was he believable? Was he evasive? Did he hesitate? A cold printed transcript offers no answers to such questions.

The district court correctly denied Shears any relief, and we affirm its decision.

Affirmed.